**900 G.C. AFFILIATES, INC., and Joseph Caspi, Plaintiffs,**

**v.**

**The CITY OF NEW YORK et al., Defendants.**

**No. 73 Civ. 1869 (CHT).**

United States District Court,
S. D. New York.

Nov. 16, 1973.

Siegel & Randolph, New York City, for plaintiffs.

Norman Redlich, Corp. Counsel, New York City, for defendants; Harvey G. Landau, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendants[1] have moved for judgment on the pleadings dismissing the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. Because the Court has been supplied with affidavits and other materials outside of the pleadings, both sides have been informed that defendants' motion shall be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have moved for an order staying revocation of their New York City Department of Consumer Affairs cabaret license number 551859. For the reasons discussed below, defendants' motion is granted and plaintiffs' motion is denied.

## FACTS

The pleadings and affidavits filed by both sides indicate that there is no genuine issue as to any material fact. The facts, as disclosed by the papers, will therefore be summarized before the motions are disposed of on the merits.

Plaintiff Joseph Caspi owns the Concourse Plaza Hotel, which is located in the Bronx. He owns 100% of the stock of plaintiff 900 G.C. Affiliates, Inc., a New York corporation which manages the Hotel. The Hotel is located in a part of New York City which is undergoing racial change from white to black. Within the Hotel is situated a discotheque named The Tunnel, which is frequented by blacks. Apparently, residents of the neighborhood have been complaining for some time that The Tunnel is a public nuisance because those who frequent it have harassed and annoyed residents and passersby on several occasions.

In October 1972, the New York City Department of Consumer Affairs ("the Department") issued to plaintiffs a one-year cabaret license number 551859 permitting plaintiffs to conduct The Tunnel as a cabaret so long as plaintiffs complied with the laws of the State of New York, the rules and regulations of the Department, and the rules and regulations of all other New York State and New York City agencies.[2]

---

1. Although Natalie Cass is named as a defendant in this action, she was not served. Therefore, the complaint is dismissed as to her for lack of *in personam* jurisdiction.

2. The Department is authorized to issue, renew, suspend or revoke cabaret licenses pursuant to § 2203(c) of the New York City Charter and § 773a–7.0, B–32–297.0 of the Administrative Code of the City of New York.

On or about November 29, 1972, a resident of the community, Mrs. Natalie Cass, wrote to defendant Bess Myerson, who was at that time Commissioner of the Department, asking that The Tunnel's license be revoked and that it be permanently closed. Apparently, the Department took no further action until January 1973, when it sent inspectors to the premises of The Tunnel on three occasions. The inspectors noted what they thought to be violations of the City's Administrative Code. In accordance with Department procedures, the Department sent written notice to plaintiff 900 G.C. Affiliates, Inc. on January 31, 1973, indicating that a hearing would be held on February 7, 1973 regarding certain listed charges against the Tunnel in order to determine whether The Tunnel's license should be suspended or revoked.

Nine of the listed charges are what plaintiffs have termed "technical violations": use of unlicensed rooms for discotheque purposes; failure to post at the licensed premises a sign informing the public that they may report complaints to the Department; and failure to keep a personnel roster containing a record of each employee, his address, occupation and dates of employment. The tenth charge, apparently based on Mrs. Cass' complaint, stated:

> "[t]hat the licensee has operated and maintained and continues to operate and maintain the premises in a manner causing annoyance, abuse and harassment of residents of the neighborhood and of persons using the public walks at and near the premises, by causing large numbers of persons to congregate in, at and by the premises and immediately at the entrance thereto, knowing that and having reason to know that persons attracted to the premises and resorting thereto, would annoy, harass and abuse residents and sojourners in the area."

Hearings were held before defendant Richard Haimowitz on February 7, 15, 28 and March 15, 1973. At the first hearing, Mr. Leon Liner, counsel for plaintiffs at the hearing, appeared and immediately requested an adjournment, stating that he had not had sufficient time to prepare for the hearings. Mr. Liner admitted, however, that his client had received proper notice. Defendant Haimowitz agreed to grant a continuance as to the first nine charges but refused to grant a continuance as to the tenth charge because it would greatly inconvenience many representatives of the community who had come to the hearing for the purpose of testifying on that charge. At that point, Mr. Liner left the hearing. Thereupon, defendant Haimowitz proceeded to hear the testimony of nine witnesses, including Mrs. Cass, a party to the Department's complaint, and defendants Abrams and Salman. All of the witnesses who gave testimony on the tenth charge were white.

At the second date of the hearings, February 15, 1973, Mr. Liner appeared, asked for certain files, and indicated to defendant Haimowitz that he would need more time to prepare his case. The hearing examiner agreed to adjourn the proceedings, but indicated that the plaintiffs could have no more adjournments.

At the third date of the hearings, February 28, 1973, Mr. Liner appeared and actively participated in the proceedings. This portion of the hearings was devoted to the first nine charges. The hearing was adjourned before any additional evidence on the tenth charge was taken.

At the final hearing on March 15, 1973, a representative from Mr. Liner's firm presented himself to defendant Haimowitz, and handed him an affidavit which indicated that, because Mr. Liner had to attend a funeral, an additional adjournment would be necessary. Defendant Haimowitz, stating that he had earlier announced that there would be no more adjournments, refused to grant Mr. Liner's request. He noted that Mr. Liner was a member of a firm with a large number of lawyers so that someone else could have taken Mr. Liner's place at the hearings. At that point, Mr. Lin-

er's representative left the hearing room. The hearing on the tenth charge proceeded. *It should be noted that at this final hearing, 60 residents of the neighborhood were present but did not testify. All of these persons and the witnesses who testified were white.*

On March 19, 1973, the Department announced that plaintiffs' cabaret license for The Tunnel [3] would be revoked as of March 29, 1973.

## DEFENDANTS' MOTION

Defendants have moved for judgment on the pleadings dismissing the complaint for failure to state a claim for which relief can be granted.[4] Plaintiffs contend that the foregoing facts constitute a claim for relief under 42 U.S.C. §§ 1983 and 1985 and that subject matter jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343. Having examined the affidavits and the transcript of the administrative proceeding in accordance with Rules 12 and 56 of the Federal Rules of Civil Procedure,[5] the Court is of the opinion that plaintiff has failed to state a claim for relief under either § 1983 or § 1985.

### § *1983 Cause of Action*

Plaintiffs contend that defendants conspired to deprive them of their fourteenth amendment due process rights by preventing their counsel from cross-examining witnesses at the administrative hearing.

■ To succeed on the merits under § 1983, plaintiffs would have to show (1) that there was a conspiracy between defendants; (2) that the aim

of the conspiracy was to deprive plaintiffs of rights, privileges, or immunities secured by the Constitution and laws; and (3) that defendants acted under color of state law. Plaintiffs have failed to prove the first and second elements of that claim.

■ First, the record does not show that there was any denial of due process. The fourteenth amendment due process clause merely affords one who is a party in an administrative proceeding the *opportunity* to cross-examine witnesses. Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Freight Consolidators Cooperative, Inc. v. United States, 230 F.Supp. 692, 699 (S.D.N.Y.1964). One who does not choose to exercise that opportunity has no cause for complaint.

The undisputed facts indicate that plaintiffs had several opportunities to cross-examine witnesses. Indeed, they vigorously exercised that right on the days during which testimony was taken regarding the first nine charges of the Department complaint. It cannot be mere coincidence that, whenever a date was scheduled to take testimony on the tenth charge, *i. e.*, the public nuisance charge, plaintiffs' counsel, or his representative, absented himself.

■■ That the hearing examiner did not grant plaintiffs a continuance as to the tenth charge on either February 7 or March 15, 1973 does not constitute evidence of a deprivation of due process. The matter of granting a continuance before an administrative agency rests in the sound discretion of the hearing examiner unless there is a clear showing

---

3. In actuality, two additional licenses registered in plaintiffs' name were also revoked. Because there was no evidence offered at the administrative hearing justifying revocation of those licenses, the New York State Supreme Court, Appellate Division, First Department annulled those revocations. In re 900 G.C. Affiliates, Inc., 42 A.D.2d 554, 346 N.Y.S.2d 509 (1973). Thus, the only license revocation currently under consideration is that pertaining to The Tunnel.

4. Defendants have also moved for summary judgment on the ground that plaintiffs have

not shown irreparable injury and on the ground that there is a prior state court proceeding pending between the parties. Discussion of these grounds is unnecessary because the case can be decided on the ground that plaintiffs have failed to state a claim for which relief can be granted.

5. As indicated *supra*, defendants' motion has been treated as one for summary judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

of abuse of that discretion. Freight Consolidators Cooperative, Inc. v. United States, *supra,* 230 F.Supp. at 700. The record shows no abuse of discretion on either date. It was reasonable for defendant Haimowitz to deny the continuance requested on February 7 as to the tenth charge in view of the fact that it would have inconvenienced 15 witnesses who had made it their business to attend the hearings on that day. A verbatim transcript was kept of the proceedings and the witnesses who testified that day were instructed that they might be recalled at a later date. Thus, those persons who testified as to the tenth charge in Mr. Liner's absence could have been cross-examined later. Similarly, the denial of a continuance on March 15 was entirely proper. Plaintiffs' counsel had been warned that there would be no further continuances and in any event, counsel could have arranged for one of his partners to stand in for him at the proceedings. It is therefore clear that plaintiffs were not denied their right to cross-examine witnesses on either date.

■ Plaintiffs have also failed to substantiate in any way the allegation of conspiracy. While conspiracy must often be proved by inference rather than by direct proof, the unsupported allegation that a conspiracy existed, whether it is contained in the pleadings or in affidavits, does not constitute sufficient evidence tending to show that a conspiracy existed. The facts show only that the defendants were performing the normal duties of their office, not that they were engaged in a conspiracy to deprive plaintiffs of their due process rights. Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir. 1964); Stambler v. Dillon, 288 F.Supp. 646, 649 (S.D.N.Y.1968).

Because plaintiff has failed to prove two of the elements necessary to a cause of action under § 1983, it is clear that so much of the complaint as is directed to that section fails to state a claim for which relief can be granted.

### § *1985 Cause of Action*

Plaintiffs have alleged in conclusory terms in their complaint and affidavit that defendants intentionally conspired to discriminate against plaintiffs and against black members of the community who visit or work at The Tunnel and that, as a result of this conspiracy, the livelihood of plaintiffs and the black community has been threatened. On the basis of the record, however, it is clear that plaintiffs have failed to state a claim for which relief can be granted.

■ Under 42 U.S.C. § 1985, it is necessary to show (1) that defendants conspired; (2) that the purpose of the conspiracy was to deprive plaintiffs of equal protection of the laws; (3) that the defendants acted under color of state law; and (4) that plaintiffs were deprived of equal protection of the laws. Rhodes v. Houston, 202 F.Supp. 624, 637 (D.Neb.), aff'd, 309 F.2d 959 (8th Cir. 1962), cert. denied, 372 U.S. 909, 83 S. Ct. 724, 9 L.Ed.2d 719 (1963).

■ Plaintiffs have failed to substantiate three of the required elements of proof. There is no proof tending to show that defendants conspired, that there was a conspiracy to deprive plaintiffs of equal protection of the laws by discriminating against them on the basis of race, or that plaintiffs' license was revoked because of racial considerations. Although it is true that the Department's Commissioners, the hearing examiner and the witnesses were white, that does not, in and of itself, show that there was any racial discrimination. Plaintiffs offered no proof to show that persons similarly situated—*e. g.*, owners of discotheques frequented by whites—are, or would have been, treated in a different manner. *Cf.*, Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020, 1022 (S.D.N.Y.1971). The record clearly indicates that it was the behavior of those who frequented The Tunnel, and plaintiffs' knowledge of that behavior—not the fact of race—which led, in part, to the decision to hold a hearing and later to revoke plaintiffs' license for The Tunnel.

## PLAINTIFFS' MOTION

 Plaintiffs have moved for a preliminary injunction staying defendant Furness, her agents, servants, attorneys and/or employees from enforcing the March 19, 1973 order of revocation. A preliminary injunction will only be granted if plaintiffs can show (1) that it is reasonably probable that they will succeed on the merits and (2) that denial of the requested relief will result in irreparable damage. *See, e. g.,* Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., 428 F.2d 379 (2d Cir. 1970); Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F.Supp. 821 (S.D.N.Y.1969). In view of the fact that plaintiffs cannot succeed on the merits, plaintiffs' motion must be denied.

## CONCLUSION

Accordingly, defendants are granted summary judgment dismissing the complaint. Settle judgment on five (5) days' notice within fifteen (15) days of the filing of this opinion.