**MARTIN HODAS, EAST COAST CINE-MATICS, INC., et al., Plaintiff,**

v.

**John V. LINDSAY et al., Defendants.**

**No. 74 Civ. 3095.**

United States District Court,
S. D. New York.

April 20, 1977.

Kassner & Detsky, P.C., New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants Jacobs and Cavanaugh by Robert S. Hammer, Asst. Atty. Gen., New York City.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Redlich, Isenberg, Bardel, Grant, Furness, Peterson, Horman, Gray and Goldberg by Renee Modry, Asst. Corp. Counsel, New York City.

Townley, Updike, Carter & Rodgers, New York City, for defendant Sherman by Andrew L. Hughes, Gayle A. Yeomans, New York City.

## OPINION

ROBERT L. CARTER, District Judge.

This action is brought under 28 U.S.C. §§ 1331, 1332 and 1343 and 42 U.S.C. §§ 1983, 1985 and 1986. Plaintiffs allege that defendants deprived them of their rights under color of state law. Defendants Redlich, Isenberg, Bardel, Meyerson, Furness, Peterson, Hormon, Gray and Goldberg move pursuant to Rules 56(b) and 12(b)(6), F.R.Civ.P., for summary judgment and/or dismissal for failure to state a claim upon which relief can be granted. Defendant Sherman moves pursuant to Rule 12(c), F.R. Civ.P., for dismissal on the pleadings. In a motion made returnable March 14, 1977, defendants Jacobs and Cavanaugh join in the motion for dismissal under Rule 12(b)(6), F.R.Civ.P.

### Statement of the Case

Plaintiffs charge various New York State and New York City officials with wholesale violations of plaintiffs' constitutional rights, including illegal search and seizure, failure to bring plaintiff Hodas promptly before a Magistrate for arraignment, unlawful enforcement of unconstitutional laws, making of false statements at arraignment, procuring the indictment of Hodas by perjured grand jury testimony, conspiring to suppress expression and to put plaintiff Hodas and the corporate plaintiffs out of business. Plaintiffs allege that these acts violated their rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Defendant Sherman, a newspaper reporter for the Daily News, is alleged to have participated with state officials in certain of the above acts.

Defendants raise a number of contentions in support of their motion for summary judgment. They assert that the court lacks jurisdiction of certain of plaintiffs' claims; that plaintiffs' claims are time-barred; that defendant Redlich, Corporation Counsel for

the City of New York, has absolute immunity from suit; that plaintiffs do not state a claim for relief under 42 U.S.C. §§ 1983, 1985 and 1986; and that plaintiffs have failed to allege facts sufficient to show the existence of a conspiracy. These contentions shall be discussed seriatum.

### Jurisdiction

 Defendants contend, correctly, that this court does not have jurisdiction under 28 U.S.C. § 1332. This provision confers jurisdiction on federal courts where there is diversity of citizenship between the parties *and* the amount in controversy exceeds $10,000. It is well settled that the essential elements of diversity jurisdiction must be affirmatively alleged in the pleadings. *See, e.g., Hodgson v. Bowerbank,* 5 Cranch (9 U.S.) 303, 3 L.Ed. 108 (1809); *Gates v. Osborne,* 9 Wall. (76 U.S.) 567, 19 L.Ed. 748 (1869). Plaintiffs have failed to do this. Therefore this court has no jurisdiction under § 1332.[1]

However, that by no means disposes of this case, since plaintiffs have properly alleged jurisdiction under 28 U.S.C. §§ 1331 and 1343, which defendants do not challenge.

### Statute of Limitations

 All parties agree that "since there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action under [§§ 1983, 1985 and 1986], the controlling period would ordinarily be the most appropriate one provided by state law." *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The parties most emphatically disagree, however, as to what is the most appropriate state limitation period. Defendants would have the court choose General Municipal Law Section 50–i, which provides for a 1 year 90 day limitation period.[2] Plaintiffs counter that New York CPLR § 214(2), which provides for a three year limitation period, is the most appropriate state provision.[3] I am persuaded by the plaintiffs.

In *Kaiser v. Cahn,* 510 F.2d 282 (2d Cir. 1974), this circuit anticipated the Supreme Court's later decision in *Johnson,* holding that in federal civil rights actions the absence of a federal statute of limitations required the federal courts to borrow the "state statute of limitations applicable to the most similar state cause of action." *Id.,* at 284.[4] The court determined that in New York this is C.P.L.R. § 214(2)—liability based on a statute. *Ibid.*

Contrary to defendants' contention, the validity of this holding is unaffected by the court's more recent decision in *Fine v. City of New York,* 529 F.2d 70 (2d Cir. 1975). *Fine* involved a civil rights claim against New York City under 42 U.S.C. § 1983 and

1. Defendants also correctly assert that the court has no jurisdiction under 42 U.S.C. § 1343, which is non-existent.

2. General Municipal Law Section 50–i states: "1. No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof, including volunteer firemen of any such city, county, town, village, fire district or school district or any volunteer fireman whose services have been accepted pursuant to the provisions of section two hundred nine-i of this chapter, unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based.

3. C.P.L.R. Section 214(2) provides: "The following actions must be commenced within three years . . . 2. an action to recover upon a liability penalty or forfeiture created or imposed by statute . . . ."

4. The plaintiff in *Kaiser* sued a county district attorney on the ground that he had been denied a fair trial because of the defendant's malicious pre-trial actions.

under the Fourteenth Amendment.[5] Because it held that the City was not a "person" and thus could not be sued under § 1983, the court was faced with the issue of deciding what was the most appropriate state statute of limitations to apply to a civil rights action against a municipality based on the Fourteenth Amendment. *See Johnson v. Railway Express Agency Inc., supra.* For obvious reasons, the statute chosen was General Municipal Law § 50–i, which governs tort claims against municipalities.

Clearly, *Fine* is not inconsistent with *Kaiser v. Cahn, supra,* and has only limited relevance to this case. The defendants here are individuals, not cities, and Section 50–i of the New York General Municipal Law provides the one year 90 day time limitation only where an action or proceeding is prosecuted against a city. C.P.L.R. Section 214(2), on the other hand, has no comparable limiting provision, but applies to all actions involving liability based on a statute, even though the party being sued is an individual. C.P.L.R. Section 214(2), then, is clearly the most appropriate statute to apply here.

I find troublesome, however, a recent decision by Judge Platt of the Eastern District of New York which suggests a different result. In *Lombard v. Board of Education of the City of New York,* 407 F.Supp. 1166 (E.D.N.Y.1976), a teacher who had been fired brought a civil rights action under 42 U.S.C. § 1983 against the Board of Education and the school principal. Plaintiff sought damages and equitable relief, including reinstatement. For reasons that need not be articulated here, the court allowed the plaintiff to amend his complaint and to add a claim for equitable relief, based on 28 U.S.C. § 1331 and the Four-

teenth Amendment. In so holding, Judge Platt noted, however, that

> "even if plaintiff now wished to amend his complaint further to make a claim for . . . money damages, in all probability he would be held to be time-barred. *Fine v. The City of New York, et al.,* 529 F.2d 70 (2d Cir. 1975).

> It is perhaps significant to note that the limitations provisions indicated in the *Fine* decision (viz, New York General Municipal Law § 50–i) would appear to be applicable to money damage claims but not to a claim for equitable relief such as that of the plaintiff." [citations omitted]

█ If, as defendants urge, Judge Platt's reading of *Fine* were adopted by this court, plaintiffs' claims would be time-barred, as plaintiffs seek only money damages, and as the acts on which plaintiffs' claims are based took place considerably more than one year 90 days before the filing of plaintiffs' complaint. However, while it is true that the plaintiff in *Fine* was seeking only money damages, there is nothing in the Court of Appeals' opinion to indicate that the timeliness of a civil rights claim seeking money damages would always be governed by General Municipal Law § 50–i. Section 50–i was chosen by the *Fine* court because it determined that the cause of action on which the plaintiff's claim was based was most similar to a cause of action brought under state law against a municipality. Where the defendants are individuals and not a city, as here, the reasoning in *Fine,* while instructive, is in no way controlling. Accordingly, defendants' suggestion that *Lombard* be followed is rejected.[6] The court holds that C.P.L.R. § 214(2) is the most appropriate state limitation period, and that plaintiffs' claims are not time-barred.[7]

**5.** *Fine* also involved claims against various individual defendants. These claims were dismissed for reasons of no concern here.

**6.** It should also be noted that *Fine,* and the relevant portion of *Lombard,* involved a claim based solely on the Fourteenth Amendment, and not on a statute. In this case, on the other hand, plaintiffs sue under 42 U.S.C. §§ 1983,

1985 and 1986, which fact further mandates the application here of C.P.L.R. § 214(2).

**7.** Defendant Furness asserts that the claim against her—that plaintiff 113 Theatre, Inc. was wrongfully denied a license—is time-barred since it was brought more than four months after the determination to deny the license. C.P.L.R. § 217. C.P.L.R. § 217, however, limits the time in which an individual may

## Prosecutorial Immunity

Plaintiffs allege that defendant Redlich, who is Corporation Counsel of the City of New York, conspired to violate their civil rights when he represented defendant Myerson in an attempt to obtain injunctions against the plaintiffs' operation without a license of so-called "peep shows", and when he commenced actions for civil penalties against plaintiffs' landlords for permitting the operations. Defendant Redlich contends that as Corporation Counsel he is absolutely immune from liability for damages resulting from his acts as public prosecutor. Defendants Jacobs and Cavanaugh, who were Assistant District Attorneys at the time in question, make the same contention. Defendants cite the recent Supreme Court decision in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), as support for their position.

■ This presents a close question. In *Imbler*, 424 U.S. at 424–25, 96 S.Ct. at 992, the Supreme Court explained as follows the underlying rationale for the grant of absolute immunity to public prosecutors acting to enforce the criminal law.

"If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. . . . Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law."

*See also Fanale v. Sheehy*, 385 F.2d 866 (2d Cir. 1975). Were plaintiffs' suit based on defendants' allegedly illegal prosecutions of the criminal law, there would thus be no question that such an action would be deficient according to *Imbler*. *See also dicta* in *Dacey v. New York County Lawyers Association*, 423 F.2d 188, 193 (2d Cir. 1969), cert. denied, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

■ The situation here is different, however. Plaintiffs' suit against defendants is based on their allegedly illegal prosecution of the *civil* law. In *Imbler*, the Supreme Court clearly indicated that its finding of absolute prosecutorial immunity was made solely in the context of the prosecution of the criminal law. *See* 424 U.S. at 430, 96 S.Ct. 984. The issue facing this court is therefore still open. Nonetheless, it is my opinion that the rationale of *Imbler* holds in the circumstances of this case, and that defendants Redlich, Jacobs and Cavanaugh are absolutely immune from suit.

Although the doctrine of absolute prosecutorial immunity serves the general public interest in that it removes a possible constraint on the activities of public prosecutors who seek to enforce the criminal laws, it does not do so without sacrifice. That sacrifice is the resulting reduction of the avenues of civil redress otherwise available to an individual who has been wronged by improper official action. The Supreme Court in *Imbler* specifically recognized this trade-off, but agreed with Judge Learned Hand, who wrote:

"As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

commence an "Article 78" proceeding against a body or officer. It does not in any fashion limit the time in which to bring a personal injury claim against an individual, which is the basis of the action here.

424 U.S. at 428, 96 S.Ct. at 994, quoting from *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). No different balance is called for here.

██ Whether a prosecutor initiates a criminal or civil proceeding, his underlying purpose in doing so is, or at least should be, to enforce the law and to take that course of action which is in the best interests of the public. Admittedly, the public generally has a lesser interest in ensuring that the prosecutor is not deterred from enforcing the civil law than it does as respects the criminal law. On the other hand, it is also evident that an individual who is the victim of illegal actions by a prosecutor which involve the civil law generally has a considerably lesser interest in pursuing his rights based on the illegality of these acts than does the individual who has felt the full force of the criminal law wrongfully applied.[8] In other words, the interests affected by the grant of prosecutorial immunity—*i.e.,* the protection of the proper functioning of public prosecutors and the protection of individuals who have wrongfully been made the targets of prosecution—are both of a somewhat lesser magnitude in the sphere of the civil law than is the case in the criminal sphere. If this is true, as I believe it to be, the balance that must be reached between these interests is quite similar regardless of whether the prosecution giving rise to the § 1983 suit happens to be criminal, as in *Imbler,* or civil, as here.

Furthermore, it is clear that in this case the grant of absolute immunity to defendants Redlich, Jacobs and Cavanaugh will not lessen to any great degree the availability of relief to plaintiffs, as these defendants are alleged to have conspired with others to deprive plaintiffs of their rights. If plaintiffs are able to show such a conspiracy they may, of course, recover damages from those individuals who are not immune from process. It should be noted that if it is revealed that either Redlich, Jacobs or Cavanaugh acted illegally in this matter, and I emphasize that there is not a scintilla of evidence to that effect, they would not be immune to any criminal charges that might be brought against them. Given the public interest in ensuring active prosecution of the laws, both criminal and civil, this should be sufficient deterrent against prosecutorial wrongdoing.

### § 1983 Claims

The complaint alleges a scheme by defendants to deprive plaintiffs of their property, to deprive plaintiff Hodas of his liberty, and to subject Hodas to illegal searches and seizures. In support of these claims, which are grounded on 42 U.S.C. § 1983,[9] plaintiffs make a myriad of charges. These charges, however, are clearly insufficient to withstand defendants' motions for dismissal.

██ For example, plaintiffs contend that from the latter part of 1971 to 1973, the defendants entered into a conspiracy to deny plaintiffs their First, Fourth, Fifth, Eighth and Fourteenth Amendment rights. In support of these allegations, however, plaintiffs simply recite the history of their contact with the law, and thereupon state the conclusion that their constitutional rights have been violated. A complaint alleging such a conspiracy must

"set forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into ef-

---

**8.** In almost every criminal case individual liberty is at least potentially threatened, and an accused may find his reputation, his place in the community, and indeed his entire future in jeopardy. This is not ordinarily so, however, in the case of a civil prosecution, although it is of course true that in unusual circumstances the pinch of the civil law may be as devastating as that of the criminal law.

**9.** § 1983 reads as follows:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."

fect whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff."

*Hoffman v. Halden,* 268 F.2d 280, 295 (9th Cir. 1959). Yet plaintiffs' claims are supported merely by vague and conclusory allegations, which by themselves are clearly inadequate to state a valid claim under § 1983. *See 900 G.C. Affiliates, Inc. v. City of New York,* 367 F.Supp. 1, 5 (S.D.N.Y. 1973); *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck,* 463 F.2d 620, 622–23 (2d Cir. 1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973); *Powell v. Workmen's Compensation Board of the State of New York,* 327 F.2d 131, 137 (2d Cir. 1964). To require less would invite individuals who are angered at government officials to vent their anger through federal court proceedings, even though they have no possible chance of success. *See Powell, supra,* 327 F.2d at 137.

I have no doubt, indeed, that that is what has happened here. Hodas (along with the theaters he controls) has sought to paint the picture of a personal vendetta aimed at depriving him of his property and his civil rights, when the evidence before the court shows nothing more than the exercise by government officials of their valid functions—in this case the attempt to deal with what they believe to be the proliferation of pornographic outlets in the midtown Manhattan area. Plaintiffs' conspiracy claims additionally suffer from the fact that none of the acts with which the defendants are charged have been linked in any way with the alleged conspiracy.

Nor are plaintiffs' claims of a non-conspiratorial nature any more substantial. For instance, defendant Furness, former Commissioner of Consumer Affairs, is charged with refusing to renew the public license of plaintiff 113 Theatre, Inc. "without hearing" and "without any cause whatsoever." Cmplt. ¶ 83. However, in her affidavit in support of defendants' motions Renee Modry, counsel for certain of the defendants, states that plaintiff's license was not renewed because it failed to appear at a departmental hearing "scheduled on notice for June 25, 1973." Modry affidavit, ¶ 78 *et seq.* Although in their 9(g) statement plaintiffs fail to concur in this assessment, they have submitted no evidence whatsoever that would tend to show Modry's version of the facts is incorrect.

Another example of the deficiency of plaintiffs' claim is the charges against defendants Horman and Gray, New York City police officers, and Jacobs, an Assistant District Attorney. In the first count of the complaint, plaintiffs allege that the evidence used to indict Hodas on charges of feloniously wholesaling obscene material was obtained by illegal searches and seizures conducted by these men at the premises of East Coast Cinematics, Inc., 210 W. 42nd Street and at the premises of various plaintiffs at 113 W. 42nd Street. Plaintiffs also complain that the material obtained by these allegedly illegal searches was turned over to the Internal Revenue Service, and resulted in the indictment of Hodas in the Southern District of New York for income tax evasion, filing of a false tax return, and conspiracy (with one Herbert J. Levin) to defraud the United States and the Internal Revenue Service.

The major problem with this charge, aside from the fact that plaintiffs have not alleged that the defendants acted in bad faith, *see Commonwealth of Pennsylvania ex rel. Feiling v. Sincavage,* 439 F.2d 1133 (3rd Cir. 1971), is that the legality of these searches and seizures have already been upheld by Judge Metzner. *United States of America v. Martin J. Hodas and Herbert J. Levin,* 75 Cr. 295 (S.D.N.Y. June 10, 1975). On July 24, 1975, Hodas was convicted by a jury of income tax evasion and of mailing a false statement on an income tax return. He was acquitted of the conspiracy charge. The Second Circuit affirmed Hodas' convictions. *United States of America v. Hodas,* 535 F.2d 1244 (2d Cir. 1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). Plaintiffs are thus barred from relitigating the issue of the legality of the searches and seizures,

*Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), even though defendants here were not a party to the earlier litigation, *Blonder Tongue v. University Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

 None of the plaintiffs' remaining claims under § 1983 have any greater merit than those briefly discussed above. Although further analysis of the plaintiffs' complaint would make that eminently clear, it would serve little purpose and waste considerable space to do anything more than simply declare the court's finding that plaintiffs' claims fall far short of that required to state a valid § 1983 claim. Defendants' motion to dismiss the § 1983 claims is granted.[10]

### §§ 1985 and 1986 Claims

Defendants assert that plaintiffs' claims which are based on 42 U.S.C. §§ 1985 and 1986 fail to state a claim on which relief may be granted. I agree.

 It is unclear from the complaint whether plaintiffs' invoke § 1985(2) or § 1985(3) as the basis for recovery.[11] That is immaterial, however, since under either subsection plaintiffs' complaint is deficient.

In *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) the court stated:

"The language [in 42 U.S.C. § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights, secured by law to all."

However, nowhere in the complaint do the plaintiffs allege any "class-based, invidiously discriminatory animus", and as such the 1985(3) claim must be dismissed. *Ibid.*; *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975); *Arnold v. Tiffany,* 487 F.2d 216 (9th Cir. 1973), *cert. den.,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974).

 The same result is called for with respect to plaintiffs' § 1985(2) claim. As the court in *Hahn v. Sargent, supra,* stated,

"[b]oth sections [1985(2) and (3)] are directed toward 'equal protection of the laws' the key phrase in the court's analysis in *Griffin.* 403 U.S. at 102. And there is nothing to suggest that the phrase was used in a different sense in § 1985(2) than it was in § 1985(3). *See Kelly v. Foreman,* 384 F.Supp. 1352 (S.D. Tex.1974); *Phillips v. Singletary,* 350 F.Supp. 297 (D.S.C.1972)." 523 F.2d at 469.

Plaintiffs may thus proceed no further under § 1985(2) than they may under § 1985(3), *Hahn, supra; Kerckhoff v. Kerckhoff,* 369 F.Supp. 1165, 1166 (E.D.Mo. 1974); *Johnson v. National Broadcasting Co., Inc.* 356 F.Supp. 904, 909 (E.D.N.Y. 1973).

 42 U.S.C. § 1986 creates a cause of action, essentially, for " 'neglect to prevent' conspiracies mentioned in § 1985. Therefore, if no cause of action is made out under 1985, none exists under 1986 . . . .." (Beauman, J.) *Barrett v. United Hospital,* 376 F.Supp. 791, 806 [fn. 70] (S.D.N.Y.), *aff'd,* 506 F.2d 1395 (2d Cir. 1974). *See also, Hamilton v. Chaffin,* 506 F.2d 904, 914 (5th Cir. 1975); *Hahn v. Sargent, supra* at 469–70; *Johnston v. National Broadcasting Co., Inc., supra* at 909–10. The failure of plaintiffs to state a cognizable claim under § 1985 thus requires that the § 1986 claim be dismissed.

Accordingly, defendants' motion to dismiss the complaint is granted.

IT IS SO ORDERED.

---

**10.** For all practical purposes, there is no real difference between the required showing of state action under the Fourteenth Amendment and the required showing of "color of state law" under 42 U.S.C. § 1983. *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Thus plaintiffs' claim against defendants under the Fourteenth Amendment must also be dismissed.

**11.** 42 U.S.C. § 1985(1) is clearly not relevant.