Andrew BORACCI, Plaintiff,

v.

Patrick MALLOY III; W. Bruce Reynolds, Malloy Enterprises, Inc., Malloy Real Estate Inc., a/k/a Malloy Realty Corp.; Sonia Henry, individually and as an agent and or employee of Patrick Malloy III, and/or one or more of the aforesaid corporations, Helen Gould, individually and as agent/or employee of Patrick Malloy III; and one or more of the aforesaid corporations; Michael Salargo; John Harrington, individually and as Police Chief of the Village of Sag Harbor; John P. Finnerty, individually and as Sheriff of Suffolk County; Sam Johnson, William Esseks; Patrice O'Hear; Esseks, Hefter, Cuddy & Angel, a partnership; and John F. Johnson, and John Bennett, individually and as employees of the Sheriff's Office; Defendants.

No. 82 Civ. 5162 (JES).

United States District Court,
S.D. New York.

Sept. 15, 1986.

Arthur G. Nevins, Jr., New York City, for plaintiff.

Esseks, Hefter, Cuddy & Angel, Riverhead, N.Y., for defendants Malloy, Reynolds, Johnson, Esseks and Esseks, Hefter, Cuddy & Angel; William W. Esseks, James Heffron, of counsel.

Sutera, Siracuse & Sutera, P.C., New York City, for defendants Salargo and Harrington; Emanuele J. Sutera, Charles H. Dobkin, of counsel.

Martin Bradley Ashare, Suffolk Co. Atty., Hauppauge, N.Y., for defendants Finnerty, Johnson and William Essecks; Daniel Martin, Asst. Co. Atty., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

### BACKGROUND

This is an action brought pursuant to 42 U.S.C. § 1983 (1979), with various pendent state claims. The principal allegations of the § 1983 claim are that various private individuals comprising the "Malloy Group" ("Malloy defendants") as defined by plaintiff, *see* "Amended Amended Verified Complaint" ("2d Am.Compl.") at ¶ 13,[1] conspired with defendants Salargo and Harrington of the Sag Harbor Police Department ("SHPD") and defendants Finnerty, John F. Johnson and Bennett of the Suffolk County Sheriff's Department ("SCSD") to deprive plaintiff of his property, to convert his property, and to destroy his "business and commercial relationship [sic]" for their own benefit. *See* 2d Am.Compl. at ¶ 14. Defendants have moved for summary judgment.

This case arises essentially out of a landlord-tenant dispute between members of the Malloy Group and plaintiff. From sometime in 1979 until October of 1981, plaintiff was apparently engaged in various business enterprises in Suffolk County, New York, including a cable television pro-

---

**1.** The "Malloy Group," as defined by plaintiff, comprises defendants Malloy, Reynolds, Johnson, O'Hear, Henry, and Gould, as well as the law firm of Essecks, Hefter, Cudd & Angel ("EHC & A").

gram and the publication of "East End Magazine." *See* 2d Am.Compl. at ¶¶ 9–10. In June of 1980, plaintiff leased from Malloy a commercial premises located at the Long Wharf in Sag Harbor, New York. *See id.* at ¶ 11; Ex. 1 to Affirmation in Opposition to Defendants' Motions for Summary Judgment of Arthur G. Nevins, Jr., Esq. ("Nevins Aff.").[2]

On or about June 22, 1981, plaintiff paid to defendants Malloy and Reynolds a check in the amount of $1000.00. *See* 2d Am. Compl. at ¶ 16; Ex. 2 to Nevins Aff. Plaintiff contends that this payment was to cover rent for June and July of 1981—beyond the one-year term set forth in the lease. The Malloy defendants contend that the check was in payment for past rent due and owing. *See, e.g.,* Deposition of Patrick Malloy at 81–83; Deposition of W.B. Reynolds at 67, 73–75. It is undisputed that at some time in July of 1981, defendants Reynolds and Sam Johnson effectuated a change of the locks to the Long Wharf premises formerly occupied by plaintiff. In late July, plaintiff realized he had been "locked out" of the premises, and allegedly contacted personnel at Malloy's real estate office, *see* Pl. Reply Aff., *supra* note 2, at ¶ 46, as well as various attorneys and the Sag Harbor Police Department, *see id.* at ¶¶ 46–49, in an attempt to gain access to his property in that office.

Plaintiff alleges that he tried several times until August 5, 1981 "to cause the Police Department of the Village of Sag Harbor to take a complaint for the removal of his property [and that defendant] Salargo refused to take the complaint as did other members of the Police Department who told the Plaintiff that the matter was 'Salargo's case.' " *See* 2d Am.Compl. at ¶ 18. On or about August 5, 1981, plaintiff informed Officer Salargo of his intention to enter the Long Wharf premises to collect his personal possessions, and requested that Salargo accompany him. *See id.* at ¶ 19; Pl. Reply Aff. at ¶ 50. Salargo declined this request, apparently telling plaintiff in effect that his dispute with his landlord was a civil matter, *see* Deposition of M. Salargo ("Salargo Dep.") at 26–27, that he would not accompany him, and that plaintiff could "go ahead" and break in if he wanted to. *See, e.g.,* 2d Am.Compl. at ¶ 20.

Plaintiff then did break in and retrieved some property. *See* 2d Am.Compl. at ¶ 21; Pl. Reply Aff. at ¶ 51. A warrant for plaintiff's arrest on a charge of burglary was subsequently issued. *See* Pl. Reply Aff. at ¶ 51. The complaint was signed by defendant Reynolds and witnessed by Police Chief Harrington. *See* Ex. 3 to Nevins Aff.; 2d Am.Compl. at ¶ 22; Pl. Reply Aff. at ¶ 53. Plaintiff was arrested, booked, fingerprinted, arraigned on the charge, and then released. *See* 2d Am.Compl. at ¶ 23; Pl. Reply Aff. at ¶ 53. On or about March 10, 1982, the criminal charges against plaintiff were dismissed. *See* 2d Am.Compl. at ¶ 32.

On January 25, 1982, the SCSD defendants conducted a sheriff's sale at the Long

---

**2.** The Court notes that plaintiff's attorney's affirmation, which is not made on the personal knowledge of a party or witness, does not comply with Rule 56(e), and hence its myriad allegations and conclusory assertions must be accorded no weight. *See, e.g., Federal Republic of Germany v. Elicofon,* 536 F.Supp. 813, 822 (E.D. N.Y.1978), *aff'd,* 678 F.2d 1150 (2d Cir.1982); *Union Insurance Society of Canton, Ltd. v. Gluckin & Co.,* 353 F.2d 946, 952 (2d Cir.1965). The Court also notes that, like so many of the papers submitted by counsel in this action, this affirmation is not a model of clarity or organization, and "Exhibit 1" is neither clearly marked, nor tabbed, nor otherwise distinguishable from the affirmation and the exhibits annexed thereto; it is termed "Exhibit 1" by plaintiff's counsel at page 2 of his affirmation, and the Court simply utilizes that appellation as a convenience. The Court also notes that plaintiff's second amended complaint speaks of various actions in July and August of 1982. *See, e.g.,* 2d Am.Compl. at ¶¶ 13, 18, 19. These allegations are obviously erroneous, as the lock-out and arrest at issue took place in the summer of 1981. *See* Plaintiff's Reply Affidavit ("Pl. Reply Aff.") at ¶¶ 45–46.

Similarly, the amended Notice of Motion filed by counsel for the Malloy defendants includes what is purported to be a "Statement Pursuant to Rule 3(g)," *i.e.,* a statement of material facts as to which defendants contend there is no genuine issue to be tried. Instead, it is a listing of conclusory statements as to the non-existence of facts sufficient to support plaintiff's claims.

Wharf premises, at which the property in that office was sold in satisfaction of a judgment obtained against plaintiff's East End Magazine, Inc. by an entity called Searles Graphics. *See* 2d Am.Compl. at ¶ 26–27; Pl. Reply Aff. at ¶¶ 56, 59. There is no allegation that Searles Graphics was in any manner connected with any of the defendants in this action. Despite an allegation to the contrary in his complaint, *see* 2d Am.Compl. at ¶ 26, plaintiff has stated in his reply affidavit that he was aware during the autumn of 1981 of the pendency of this sale and the circumstances leading up to it. *See* Pl. Reply. Aff. at ¶¶ 56, 59–61. Defendant Reynolds purchased the property for approximately $100.00 at the sale, which was attended only by defendants Reynolds, Henry, and Gould. *See* 2d Am.Compl. at ¶ 26.

Plaintiff alleges, *inter alia*, that the sale was illegal because of failure to provide adequate notice thereof. *See id.* at ¶ 28. It is worth noting that nowhere does plaintiff contend that New York law and procedures governing sheriff's sales are unconstitutional in and of themselves. Plaintiff further contends that the Malloy defendants and the SCSD defendants should have known that the property sold was not the property of East End, Inc., but plaintiff's personal property, with a value far in excess of the price Reynolds paid for it. *See id.* at ¶ 31.

## DISCUSSION

Plaintiff bases this action, in which he seeks several million dollars in damages for alleged civil rights violations, upon numerous unsubstantiated allegations of a far-flung conspiracy, in which Malloy, a prominent local East End business and community figure, purportedly directed a cadre of his employees and public officials in a complex plot to deprive plaintiff of his property and ruin his reputation on the East End of Long Island. *See, e.g.*, Pl. Reply Aff. at ¶¶ 7–88 *passim; see also* Plaintiff's Memorandum of Law at 9–10 ("The misconduct of the Police Officers and Sheriff's deputy [sic] in this case was the intentional conspiring with private citizens to deprive Boracci of his liberty and property and due process rights."). For the reasons that follow, the Court concludes that defendants' motions must be granted, and the complaint must be dismissed.

 Despite giving plaintiff ample opportunity to do so, the Court has been directed to no portion of the voluminous deposition testimony or other evidence elicited in discovery which supports plaintiff's allegations of conspiracy. Indeed, plaintiff's own deposition testimony indicates that he has no knowledge of any meeting between any of the defendants. *See, e.g.*, Deposition of Boracci at 64–65, 73, 77–80, 102–05. The fact that plaintiff gave Officer Salargo advance notice of his intention to "break in," *see id.* at 72–73; *see also* Salargo Dep. at 26–27, along with Salargo's failure to accompany him, is clearly not sufficient to establish a conspiracy. Indeed, Salargo can hardly be faulted for refusing to become an accomplice in plaintiff's crime, nor can the SHPD be faulted for acting upon a criminal complaint stemming from the break-in. Moreover, there was certainly probable cause for the criminal prosecution which ensued, so that Boracci's allegations do not establish a malicious prosecution claim. *Cf. Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir.1984) ("*Conway I*") (and cases cited therein), *judgment reaff'd*, 758 F.2d 46 (2d Cir.1985) ("*Conway II*").

 Nor is the fact that the SHPD failed to accept plaintiff's complaint, based on his being locked out, sufficient to establish a conspiracy. That conduct was perfectly consistent with a good-faith belief that plaintiff should seek civil—not criminal—redress. The Second Circuit "has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *See Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977) (and cases cited therein). This is clearly such a case.

Likewise, plaintiff's allegations of a conspiracy between the Malloy defendants and the SCSD with respect to the sheriff's sale are devoid of any legally sufficient factual support. *Cf. id.* The mere fact that Deputy Johnson may have been to the offices of the Esseks law firm on occasions prior to the period in question, *see, e.g.,* Deposition of J.F. Johnson at 20–22, does not permit any inference of any plan or concerted action between the Malloy group and the SCSD defendants, to deprive plaintiff of his civil rights. Similarly, the mere allegation that a sheriff's sale took place, and only members of the Malloy group bid for the materials, does not satisfy plaintiff's obligation "to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *See Powell v. Workmen's Compensation Bd. of the State of New York,* 327 F.2d 131, 137 (2d Cir.1964) (and cases cited therein).

This is, therefore, not a case in which plaintiff has advanced specific allegations of material fact(s) from which a jury could infer that there had been a meeting of the minds, between and among public officials and private defendants, to deprive plaintiff of a constitutional right. *Compare Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *see also Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

Indeed, this case is noteworthy for its dearth of facts corroborative of plaintiff's conspiracy claims, notwithstanding extensive discovery. There are simply no facts to support that claim, and indeed not even any specific allegations of meetings held between members of the Malloy group and the police and sheriff's groups, or any other evidence of collusive behavior between the private defendants and state officials to undertake action to deprive plaintiff of any federal right. *Cf. Ostrer, supra,* 567 F.2d at 553; *Powell, supra,* 327 F.2d at 137; *Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532, 539–40 (E.D.Pa. 1982). In sum, plaintiff has done nothing more than "merely state vague and conclusionary allegations respecting the existence of a conspiracy." The complaint must therefore be dismissed. *See Powell, supra,* 327 F.2d at 137; *see also Martin Hodas, East Coast Cinematics, Inc. v. Lindsay,* 431 F.Supp. 637, 643–44 (S.D.N.Y. 1977).[3]

The affidavits of plaintiff and his counsel are particularly susceptible to scrutiny under Fed.R.Civ.P. 56(e). As the Second Circuit stated in affirming a grant of summary judgment:

> [Plaintiff], however, has submitted an affidavit grounded on suspicion, and bound together with rumor and hearsay. He has provided the court with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial. He has no personal knowledge of many of the events recounted in the affidavit....

*Applegate v. Top Associates, Inc.,* 425 F.2d 92, 97 (2d Cir.1970).

Plaintiff has, at best, alleged that the various private party defendants utilized various New York legal procedures in effectuating his arrest and the auctioning of his property at the sheriff's sale. However, none of the Malloy defendants may be held liable merely for invoking those state procedures, because "private misuse

---

**3.** Indeed, the words of Judge Carter seem particularly suited to this case:

> ... [P]laintiffs' claims are supported merely by vague and conclusory allegations, which by themselves are clearly inadequate to state a valid claim under § 1983.... To require less would invite individuals who are angered at government officials to vent their anger through federal court proceedings, even though they have no possible chance of success....

> I have no doubt, indeed, that that is what happened here. [Plaintiff] ... has sought to paint the picture of a personal vendetta aimed at depriving him of his property and his civil rights, when the evidence before the court shows nothing more than the exercise by government officials of their valid functions.

> . . . . .

*Martin Hodas, East Coast Cinematics, Inc. v. Lindsay,* 431 F.Supp. 637, 644 (S.D.N.Y.1977) (citations omitted).

of a state statute does not describe conduct that can be attributed to the State," unless those procedures are, in themselves, challenged as unconstitutional. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S.Ct. 2744, 2755–56, 73 L.Ed.2d 482 (1982). No such claim is made here.

As noted *supra*, there are no assertions of specific facts sufficient to support an allegation that any public officials took any illegal action as members of any conspiracy to misuse those procedures, nor has there been any allegation or showing by plaintiff that any of those procedures was or is unconstitutional. Because he has alleged only misuse or abuse of state statutes, and only conclusory allegations in support of the alleged conspiracy, plaintiff's complaint must be dismissed. *Cf. id.* at 942, 102 S.Ct. at 2756.[4]

## CONCLUSION

Despite ample opportunity to amend his pleadings and conduct discovery, plaintiff has been unable to properly allege and document the existence of any agreement, understanding, or conspiracy—between any member of the Malloy group and any one or group of the SHPD or SCSD defendants—to deprive him of any federal right. *Cf. Ostrer, supra*, 567 F.2d at 553–54; *Chicarelli, supra*, 551 F.Supp. at 539–40. The Court has simply been provided with no facts from which any reasonable inference of such a conspiracy could be drawn. In short, it is legally insufficient for a plaintiff in a § 1983 action to merely recite the history of his contacts with the law, and baldly assert, in conclusory terms, that his constitutional rights have been violated. *See Hodas, supra*, 431 F.Supp. at 643–44. Moreover, as has been noted, mere invocations of state legal proceedings by private parties do not constitute "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action under color of law. *See Lugar, supra*, 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21.

In view of the dismissal of the federal claim and the fact that the case has not yet been tried, the Court also declines to exercise pendent jurisdiction over the state law claims. *Cf. United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Diamond v. Am-Law Publishing Corp.*, 745 F.2d 142, 148 (2d Cir.1984); *Reese Publishing Co., Inc. v. Hampton International Communications, Inc.*, 620 F.2d 7, 12–13 (2d Cir.1980); *Weisman v. Sherry*, 514 F.Supp. 728, 734 (M.D.Pa.1981).

For all the foregoing reasons, defendants' motions for summary judgment are granted. The complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

It is SO ORDERED.

---

4. The Court further notes that with respect to the allegedly tainted sheriff's sale, plaintiff had available to him several remedies under New York law. *See, e.g.,* New York Civil Practice Law and Rules ("CPLR") 215(1), 2003, 5230, 5232, 5233 (McKinney 1978). Indeed, CPLR 2003 explicitly provides a vehicle to remedy an improperly conducted judicial sale within one year of its occurrence. Thus, plaintiff cannot maintain that he has been deprived of his property without due process. *See Hudson v. Palmer*, 468 U.S. 517, 534–36, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981); *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir.1975), *modified en banc*, 545 F.2d 565 (7th Cir.1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

To the extent that plaintiff can be said to allege that the failure of the SHPD defendants to "take a complaint for the removal of his property" from the Long Wharf premises in August of 1981, *see* 2d Am.Compl. at ¶ 18; Boracci Dep. at 62–63, deprived him of that property without due process, that deprivation has not been alleged to be and is not the result of some established procedure. Any such alleged deprivation would, at best, be the result of the unauthorized failure of the SHPD defendants to follow an established procedure. Such an allegation is not sufficient to sustain a § 1983 claim. *Cf. Parratt, supra*, 451 U.S. at 535–44.