617 F.2d 320
 Lester LEE, Plaintiff-Appellant,
v.
Joseph "Scooter Joe" WILLINS, Kenneth Kaufman, "John
Bailey", "John James", "John Doe" and "Richard
Roe", Police Officers of the City of New
York, Defendants,
and
Eugene Gold, District Attorney of the County of Kings, and
Thomas Davenport, Assistant District Attorney of
the County of Kings, Defendants-Appellants.
 No. 808, Docket 79-2178.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 27, 1980.
Decided March 17, 1980.
 
 Stuart K. Lesansky, New York City (John S. Kinzey, New York City, of counsel), for plaintiff-appellant.
 Robert J. Schack, Asst. Atty. Gen., State of N. Y. (Robert Abrams, Atty. Gen., Gerald Ryan, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, TIMBERS, Circuit Judge, and WERKER, District Judge.*
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 In 1977, Lester Lee brought this action under 42 U.S.C. § 1983 against Kings County District Attorney Eugene Gold, Assistant District Attorney Thomas Davenport, six New York City police officers, state judges, and his defense counsel. Lee alleged that the defendants had conspired to violate his civil rights in connection with criminal prosecutions brought against him for the murders of Police Officer Elijah Stroud and Lawrence Cooper, a drug dealer, and for unlawful possession of a firearm. Though convicted on the weapons charge, Lee was acquitted of the Cooper murder. In addition, he was tried five times on the Stroud indictment. His first trial ended in a hung jury. His second resulted in a conviction that was reversed on appeal because of improper remarks to the jury by the trial judge and defendant Davenport. When Lee's third and fourth trials ended in deadlocked juries, Lee sought a writ of habeas corpus in federal court to enjoin further prosecution. District Attorney Gold, meanwhile, obtained a fifth indictment, but the state trial judge dismissed it and ordered Lee released from prison, where he had been incarcerated awaiting trial for five years. Judge Nickerson, to whom the habeas petition proceeding was assigned, permitted Lee to amend his petition to allege civil rights violations by the prosecutors and police, to seek money damages, and to drop his claims against the judges and defense counsel.
 
 
 2
 Specifically, Lee alleged that the prosecutors had (1) induced a defense witness, Juanita Roman, to render herself unavailable to testify in return for dropping felony charges against her, (2) compelled a witness, Marguerita Rhodes, to perjure herself by arresting and incarcerating her for fifteen days without cause and threatening to "take away" her baby, (3) coerced false testimony from Joseph Cox by imprisoning him and depriving him of methadone, (4) sought and obtained five indictments for the same crime, and (5) supervised police officers who "planted" a pistol in Lee's possession. Judge Nickerson granted a motion to dismiss the complaint as against defendants Gold and Davenport, Lee v. Willins, 474 F.Supp. 970 (E.D.N.Y.1979), relying upon the prosecutorial immunity recognized in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); and entered final judgment under Fed.R.Civ.P. 54(b). We affirm.
 
 
 3
 Imbler held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. at 431, 96 S.Ct. at 995. The Court, however, recognized that absolute immunity from suit might not attach to a prosecutor's acts performed in an investigative or administrative capacity. Id. at 430-31, 96 S.Ct. at 995. Accordingly, as one Court of Appeals has noted, "(t)he crucial inquiry concerns the nature of the official behavior challenged, not the identity or title of the officer responsible therefor." Briggs v. Goodwin, 186 U.S.App.D.C. 179, 190, 569 F.2d 10, 21 (D.C.Cir.1977), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). Thus, in Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979), a district attorney was given only the qualified "good faith" immunity that protects, for example, police officers, for his role in planning a police raid on an apartment owned by the Black Panther Party. Id. at 632; accord, Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir. 1979); Slavin v. Curry, 574 F.2d 1256, 1264-65, modified, 583 F.2d 779 (5th Cir. 1978).
 
 
 4
 The Supreme Court in Imbler recognized, however, that "(p)reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." 424 U.S. at 431 n.33, 96 S.Ct. at 995 n.33. Thus, "(t)o grant a prosecuting attorney absolute immunity over his decision to initiate a prosecution while subjecting him to liability for securing the information necessary to make that decision would only foster uninformed decisionmaking . . . ." Forsyth v. Kleindienst, supra, 599 F.2d at 1215. Courts, therefore, are left with the difficult chore of drawing a line separating amorphous and vague notions of "investigating" and "prosecutorial" conduct.
 
 
 5
 We believe Judge Nickerson sensibly distinguished these two concepts in his opinion below. Although he recognized that prosecutorial and investigatory activities are necessarily interrelated to some degree, he separated them for purposes of applying the Imbler test for triggering the defense of absolute immunity by reference to the type of harm allegedly suffered. We endorse this useful and sensible approach. Under this analysis, a prosecutor is immune from a suit to recover for an injury arising solely from the prosecution itself e. g. being compelled to stand trial or to suffer imprisonment or pretrial detention. Such harm must always result in substantial part from the protected prosecutorial activities of initiating prosecution or presenting the state's case. Imbler v. Pachtman, 424 U.S. at 409, 96 S.Ct. at 985.
 
 
 6
 Where the alleged harm is inflicted independently of the prosecution, however, absolute immunity will not attach. See Hampton v. Hanrahan, supra. If, for example, a prosecutor violates the Fourth Amendment by conducting an illegal search, the victim is harmed by the invasion of his zone of privacy, whether or not the evidence unlawfully obtained is introduced at trial. Redress for this harm is not barred by Imbler. See J.D. Pflaumer, Inc. v. United States Department of Justice, 450 F.Supp. 1125 (E.D.Pa.1978).
 
 
 7
 The complaint in the instant case alleges prosecutorial misconduct, including falsification of evidence, and the coercion of perjured testimony from a number of witnesses. But the injuries to Lee that could result from these acts are, as his amended complaint states, the deprivation of his liberty for five years, his subjection to the ordeal of multiple trials, and the emotional and economic injury resulting therefrom. These are precisely the alleged injuries for which Imbler granted absolute immunity. Since appellees Gold and Diamond are totally immune from suit for damages of this kind, the motion to dismiss was properly granted. Judge Nickerson correctly noted, however, that a prosecutor might not enjoy absolute immunity from suit by a witness who was allegedly threatened and imprisoned to obtain his perjured testimony. Here, Lee claims to have suffered no harm at the hands of appellees that was not a direct result of his prosecution.
 
 
 8
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the Southern District of New York, sitting by designation