**Harry Theodore KATZ, Plaintiff,**

v.

**Robert M. MORGENTHAU, Harold Wilson, Sandra Gabrilove, Paul Giddins, Joseph Hardiman, Daniel McKenna, Joseph Cannizzarro, Joan Steproe, the City of New York, Daniel Shapiro, Paul Roth, Schulte, Roth & Zabel, Federation of Jewish Philanthropies of New York, Joyce Dubensky, William Kahn, Marilyn Lipman, United Jewish Appeal, Inc., Anita Sarno, Associated YM–YMHAs of Greater New York, Inc., Samuel Field YM–YMHA, Jay North, Noel Nathanson, Michelle Stern, Defendants.**

No. 86 Civ. 0067 (CBM).

United States District Court,
S.D. New York.

March 17, 1989.

Harry Katz, Rockaway, N.Y., pro se.

Robert M. Morgenthau, Dist. Atty., New York County, New York City by Norman Barclay, Colleen Cain, Asst. Dist. Attys., for defendants Morgenthau, Asst. Dist. Attys. Wilson, Gabrilove and Giddons.

Barry, McTiernan & Moore by Michael F. Close, for defendants United Jewish Appeal, Inc. & Anita Sarno.

Fitzroy Hopkins, New York City by Fitzroy Hopkins, Corp. Counsel, for defendant The City of New York.

Wilson, Elser, Moskowitz, Edelman, & Dicker, New York City by James L. Fischer, for defendants Daniel Shapiro, Paul Roth, Schulte, Roth & Zabel, Federation of Jewish Philanthropies of New York, Joyce Dubensky, William Kahn, Marilyn Lipman, Associated YM–YWHAs of Greater New York, Inc., Samuel Field YM–YWHA, Jay Roth, Noel Nathanson, and Michelle Stern.

## OPINION

MOTLEY, District Judge.

### I. INTRODUCTION

This action arises out of a conflict between plaintiff Harry Katz and twenty-three defendants, all of whom participated in some way in a criminal proceeding against him which ultimately resulted in his conviction of Aggravated Harassment in the Second Degree under New York Penal Law 240.25 (McKinney's Consol. 1980). Plaintiff has asked this court to render a default judgment against defendants, to order the police officers to sign a written statement waiving any objections to Corporation Counsel representation of their defense, and to award him $27 million in compensatory damages and $100 million in punitive damages with costs, interest, and a jury trial in compensation for alleged violations of his constitutional rights. Defendants have moved to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6). After careful review of the motions, on notice to the parties by order dated August 22, 1986, the court has converted defendants' motion to dismiss to a motion for summary judgment. That motion is granted for reasons stated below.

### II. FACTS.

From January 1984 through August 1984, plaintiff Harry Katz regularly partici-

pated in volleyball games at the Samuel Field YMHA in Queens, New York. He was eventually barred from the "Y" by employee Michelle Stern, President Noel Nathanson and former Executive Director of the Federation of Jewish Philanthropies Jay Roth, for the alleged harassment of a female patron and general inappropriate behavior. Plaintiff was angered by what he perceived to be an unjust decision and by the disregard of his request to William Kahn, Executive Vice–President of the Federation, that Kahn fire Ms. Stern and permit him to confront Mr. Roth about the decision to have him barred. This anger led plaintiff to frequently call the homes of Jay Roth and Dr. Nathanson, who had just had a heart attack, even during the High Holy Days of Rosh Hashanah. Plaintiff also interviewed Dr. Nathanson's neighbors to find out about him. He followed Mr. Roth's child. He also followed Ms. Stern home from her work.

Based on these activities, coupled with the threatening tone of his phone calls, Katz was arrested on October 19, 1984, upon a warrant issued by Judge Richard Andrias, based on a felony complaint sworn to by Detective Joan Steproe (amended complaint, exhibit C). Upon his arrest, Katz's home was searched and a licensed gun and permit were taken by police officers Steproe, McKenna, and Cannizarro (amended complaint, ¶¶ 22, 68, 69). Katz was arraigned and released without bail (amended complaint, ¶ 23).

On February 26, 1985, plaintiff was tried in the Criminal Court of the State of New York, County of New York, before Justice Frank Diaz and a jury, on charges of Attempted Coercion in the Second Degree and Aggravated Harassment in the Second Degree. On March 6, 1985, the jury found plaintiff guilty of Aggravated Harassment in the Second Degree and acquitted him of Attempted Coercion in the Second Degree, New York Penal Law 110.00 (McKinney's Consol. 1980). Two other charges had been dropped prior to trial. New York Penal Law 110.00, 240.25 (McKinney's Consol. 1980). On August 7, 1985, plaintiff was sentenced to pay a $500.00 fine or to serve 90 days in jail and pay a $40 surcharge.

Plaintiff paid the fine. Plaintiff's appeal of the criminal conviction was affirmed in December 1986 by the Appellate Term of the New York Supreme Court. On November 30, 1987, plaintiff's appeal to the United States Supreme Court from his criminal conviction was dismissed by the Court for want of a substantial federal question.

Although plaintiff does not deny the charges included in the original complaint made against him, he has filed this action *pro se* under 28 U.S.C. §§ 1331, 1332, 1343 against twenty-three defendants, charging them, *inter alia* with acting in conspiracy to deprive him of his freedom of speech, right to bear arms, freedom from unlawful search and seizure, liberty without due process, equal protection, and his right to be prosecuted by an impartial District Attorney (amended complaint ¶¶ 37–67). Specifically, he alleges twelve causes of action violative of his First, Second, Fourth, Sixth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986. He also alleges fifteen state causes of action arising from a common nucleus of operative facts.

For the sake of clarity, the twenty three defendants can be divided into three categories: 1) those who prosecuted him, including the Manhattan District Attorney Robert Morgenthau, Bureau Chief of the Consumer Protection and Complaint Bureau Harold Wilson, and Assistant District Attorneys (ADAs) Sandra Gabrilove and Paul Giddins (amended complaint, ¶¶ 33, 71, 72, 80, 82, 83, 84, 85, 86, 105, 106); 2) those who participated directly in his arrest, including officers Hardiman, McKenna, Cannizzarro, and Steproe and the City of New York (amended complaint ¶¶ 75, 104, 107, 108, 109); and 3) those who either testified against him or participated in some way in the complaint made against him, including the law firm of Shulte, Roth, and Zabel, Marilyn Lipman who works at the firm and Daniel Shapiro and Paul Roth who are partners at the firm, the United Jewish Appeal, its employee Anita Sarno, the Federation of Jewish Philanthropies, their Executive Vice–President William Kahn, their counsel Joyce Dubensky, the Associated YM–

YMHAs of Greater New York, Inc., of whom the Samuel Field "Y" is a member, former Samuel Field YMHA Executive Director Jay Roth, President of the Board of Samuel Field YMHA Noel Nathanson, and employee Michelle Stern (amended complaint 31, 34, 36, 77, 78, 110–23).

## III. JURISDICTION

■ Contrary to plaintiff's contention, this court does not have jurisdiction under 28 U.S.C. § 1332, a provision which, at the time plaintiff initiated the instant suit, confers jurisdiction on federal courts where there is diversity of citizenship between the parties and where the amount in controversy exceeds $10,000. It is well settled that the essential elements of diversity jurisdiction must be affirmatively alleged in the pleadings. *Gates v. Osborne,* 9 Wall. (76 U.S.) 567, 19 L.Ed. 748 (1870); *Hodgson v. Bowerbank,* 5 Cranch (9 U.S.) 303, 3 L.Ed. 108 (1809); *Martin Hodas, East Coast Cinematics, Inc. v. Lindsay,* 431 F.Supp. 637, 640 (S.D.N.Y.1977). Plaintiff has not done this. Jurisdiction is available, however, under 28 U.S.C. §§ 1331 and 1343.

## IV. MOTION FOR DEFAULT JUDGMENT

Plaintiff Harry Katz asks the court to enter a default judgment against defendants Paul Roth, Daniel Shapiro, and the law firm Shulte, Roth and Zabel, United Jewish Appeal, Anita Sarno, District Attorney Robert Morgenthau, and assistant District Attorneys (ADAs) Giddins, Wilson and Gabrilove. Plaintiff argues that the defendants committed various procedural infractions when they filed their Motions to Dismiss with the court, including allegedly filing a motion thirty days late, failing to give proper ten day notice under Local Rule 3(c)(2) and filing a motion one day late. These infractions, plaintiff believes, were committed maliciously and violate Federal Rules of Civil Procedure 55(a).[1] For reasons set forth below, that motion is denied.

■ The entry of a default judgment is subject to the court's discretion and is a sanction generally favored as a last, not a first resort. *See e.g., Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981) (per curiam) (reverses trial court entry of default judgment even though defendants were ten days late in serving amended answer, failed to answer interrogatories and where some question existed as to the meritoriousness of their defenses); *Peterson v. Term Taxi Inc.,* 429 F.2d 888, 891 (2d Cir. 1970) (because a default judgment is deemed a "most 'drastic remedy,'" the court reversed the district court's denial of plaintiff's motion to vacate the default judgment where circumstances indicate that plaintiff's failure to appear in court on the designated date was a result of "poor judgment" and not of willfulness or of unwillingness to prepare for trial); *Hazzard v. Weinberger,* 382 F.Supp. 225 (S.D. N.Y.1974), *aff'd without opinion,* 519 F.2d 1397 (2d Cir.1975) (denying default judgment against defendant who filed a motion to dismiss two days late). The default judgment is generally viewed:

> as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

*Jackson v. Beech,* 636 F.2d 831, 836 (D.C. Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)). *See also Societe Internationale v. Rogers,* 357 U.S. 197, 211, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958) (default judgment reversed based on findings that party made good faith effort to execute production order); *Klapprott v. United States of America,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (entry of default judgment erroneous where due to various reasons such as illness and inability to hire a lawyer, peti-

---

1. Federal Rule of Civil Procedure 55(a) states: When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

tioner failed to answer complaint within required sixty days); *Gill v. Stolow*, 240 F.2d 669, 672 (2d Cir.1957) (reversing default judgment upon showing that default was not willful).

Courts generally favor trial on the merits. Thus, even where doubt exists as to the exculpatory reasons set forth by the allegedly defaulting party, decisions usually are resolved in that party's favor. *Meehan v. Snow, supra,* 652 F.2d at 277.

The default sanction is a most severe sanction which a court can apply. Therefore, when faced with default motions, "[w]e are reminded not only of the severe nature of this particular default, but of the fundamental importance of the right to an adversary hearing prior to judicial determination of rights and liabilities." *Trans World Airlines Inc. v. Hughes*, 449 F.2d 51, 57 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Thus the imposition of a default judgment " 'must be tempered with judicial discretion to assure that its imposition is merited.' " *S.E.C. v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir.1975) (quoting *Trans World Airlines Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir.1964)). To assess the merits of a default motion, courts employ a three-prong test: 1) the willfullness of the default; 2) whether the adversary would suffer prejudice were the default set aside; and 3) whether the defaulting party presents a meritorious defense. *Meehan v. Snow, supra,* 652 F.2d at 277; *Gill v. Stolow, supra,* 240 F.2d at 671–72.

 Here plaintiff argues that a default judgment should be entered against defendants Shapiro, Roth and the law firm of Shulte, Roth and Zabel because they filed an answer to plaintiff's complaint thirty days late. Affidavits dated April 23, 1986 submitted by defendants' attorneys for the Federation of Jewish Philanthropies of New York, Ms. Dubensky, Mr. Kahn, and Ms. Lipman, United Jewish Appeal, Ms. Sarno, Associated YM–YWHA's of Greater New York, the Samuel Field YM–YWHA, Mr. Nathanson, Ms. Stern, and Mr. Jay Roth, state that they inadvertently left out the remaining three defendants they represent—Mr. Shapiro, Mr. Paul Roth and the law firm of Shulte, Roth and Zabel—when requesting an extension of time to file that motion, a request agreed to by the plaintiff himself and granted by this court. Nothing in the record suggests this error was willful or malicious. Nothing in the record suggests plaintiff was prejudiced. In fact, plaintiff readily agreed to that extension and had Paul Roth, Shapiro and the law firm been included in that request, plaintiff would have agreed to it also. Furthermore, plaintiff failed to mention the error at a status conference before this court shortly after the deadline. Plaintiff also had full opportunity to respond to defendants' motion to dismiss. This court granted him a two-month extension and he has since filed a host of responsive memos—an opposition memo, reply memo, and sur-reply memo to plaintiff's motion to dismiss.

 Plaintiff further alleges that Assistant District Attorney Hylan failed to provide proper ten day notice, as required by Local Rule 3(c)(2), when he filed a motion to dismiss that was inadvertently marked returnable for the same day. There is no evidence that this error was willful or prejudicial to plaintiff. This court scheduled oral arguments on the motion to dismiss four months after that motion was filed, giving plaintiff three months to file his response to that motion, thereby curing any defect in defendants' papers. *See e.g., Meehan v. Snow, supra.*

 Finally, plaintiff asks this court to enter a default judgment against the United Jewish Appeal and Ms. Sarno for answering plaintiff's motion one day late and filing it six days late with the court. Plaintiff himself stipulated to that one day extension. Federal Rules of Civil Procedure 5(d) and (e) permits the answer to be filed within a reasonable time after service on the plaintiff. There is no reason to find the six day delay unreasonable. Therefore, plaintiff's motion is denied.

## V. CORPORATION COUNSEL REPRESENTATION

 Plaintiff also objects, as a precautionary measure, to the Corporation Coun-

sel's representation of defendant police officers McKenna, Cannizzaro, Steproe and Hardiman and the defendant City of New York unless both parties agree, on record, that such representation does not pose a conflict of interest for the Corporation Counsel. Because these defendants are not being sued in their individual capacity, no such conflict exists and this motion is denied.

A conflict of interest may arise in a Section 1983 action when a local government and police officers in their individual capacity are co-defendants. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Court held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [on a plaintiff] ... the government as an entity is responsible under Section 1983." *Id.* at 693, 98 S.Ct. at 2037. Consequently, if differing theories of liability are applicable to each defendant, a conflict of interest arises. *See also Suffolk County Patrolmen's Benevolent Ass., Inc. v. County of Suffolk*, 751 F.2d 550, 551 (2d Cir.1985) (where police officers are co-defendants with Suffolk County in section 1983 lawsuit, city recognized conflict and "proposed to create a panel of three independent attorneys and to permit a defendant officer to pick one of the three to represent him"); *Death v. Salem*, 111 A.D. 2d 778, 490 N.Y.S.2d 526, 529 (2d Dep't 1985) (conflict between defendant Assistant District Attorney and county warranted disqualification of attorney). Recognizing this potential problem, New York Public Officers Law 18(3)(b) (McKinney's 1988) provides that public employees be represented by counsel of choice upon the court's or chief legal officer's determination that a conflict of interest exists for acts taken within the scope of their employment. *See Galligan v. City of Schenectady*, 116 A.D.2d 798, 497 N.Y.S.2d 186, 187 (3d Dep't 1986).

However, attorney disqualification is not mandated in all cases of joint representation. Specifically, a conflict of interest does not exist where only the liability of the government entity by whom the police officer is employed is at issue. *See e.g., Brandon v. Holt*, 469 U.S. 464, 470–71, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985) (claim is against Director of Police in his official capacity and involves right to recover damages from the city, not from the individual who occupied the office); *Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir.1984), *modified on other grounds*, 748 F.2d 69 (2d Cir.1984) (Municipalities usually provide representation for themselves and their employees when both are sued.). Prior to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("such representation would not have caused a conflict because municipalities were not 'persons' subject to section 1983 liability.... Thus a municipality would have had no reason to give an employee less than full representation.... After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict.")

New York Public Officers law § 18(3)(b) therefore provides that the public employee be allowed representation by private counsel of his choice whenever the chief legal officer deems that a conflict of interest exists. *See e.g. Galligan, supra,* 497 N.Y. S.2d at 188. There, for example, the court found that the police officer had acted within the scope of his employment when he fired the bullets in good faith at a car holding plaintiff who was suspected of armed robbery. The court noted that "the statute does not call upon the court to make a determination of possibilities that a conflict of interest may arise in the future. The language of the statute requires the court to make a determination as to whether a conflict of interest presently exists." *Id.* at 187. The court found that there was no conflict of interest, hence attorney disqualification was not deemed necessary.

In the instant case, plaintiff does not assert that when defendant Steproe obtained the warrant for his arrest and when the three police officers came to his home, searched it, confiscated his licensed gun,

and arrested him, they did so in their individual capacity. This is a vastly different situation from the situation described in *Dunton v. County of Suffolk, supra,* 729 F.2d 903, 906–07. There, the Second Circuit found that where a police officer acted outside the scope of his official duties by acting more like " 'an irate husband rather than a police officer,' " the "municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy." *Id.* at 907. Thus there existed the possibility for serious conflict and "the attorney's conflicting representation of Suffolk County," *id.,* mandated disqualification of that attorney. Clearly, in *Dunton,* the civil rights action was brought against both the police officer and the county. Conflict arose when the county attorney asserted a defense which was good for the county but bad for the individual officer.

By contrast, in the instant action, the officers are not sued in their individual capacity. Rather, plaintiff identifies them as New York City police officers assigned to District Attorney Morgenthau detective squad. Plaintiff argues that it was under the direction of ADA Paul Giddins that Detective Steproe went before Judge Richard Andrias to get a warrant for his arrest. Moreover, in arguing that the three police officers who arrested him did so in violation of his various constitutional rights, plaintiff no where asserted that the police officers' actions were committed outside the scope of their employment. Hence, this is not a situation where conflicting defenses would be asserted by the city seeking to avoid liability by claiming the officers were acting outside their official scope, nor is it a situation where the officers, similarly seeking to avoid partial or complete liability, would claim that they were acting within the scope of their official duties, thereby shifting liability to the municipality. *Dunton, supra,* 729 F.2d at 907.

■ The district court is obligated to ensure that the defendants fully appreciate their situation when a conflict is serious and when disqualification might be warranted. *Dunton v. County of Suffolk, supra,* 729 F.2d at 908. *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977). To ensure that the litigants have such knowledge, the court may require the attorney for the defendants to provide the court with an affidavit from each of the individual defendants stating that they have understood that there may exist a conflict of interest as a result of joint representation by Corporation Counsel, and that they have chosen, nevertheless, to retain the municipal attorney as counsel. *See e.g., Manganella v. Keyes,* 613 F.Supp. 795, 799 (D.Conn.1985). Such a precaution is not necessary here because defendants are not being sued in their individual capacity.

## VI. SECTION 1983 ACTION AGAINST DEFENDANT CITY OF NEW YORK

■ Title 42 U.S.C. § 1983 imposes civil liability only upon one "who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...."

Under *Monell v. Dep't of Social Services, supra,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, a municipality may be sued for damages only when the alleged constitutional violations have been committed pursuant to an official policy or custom. Plaintiff does allege that New York City "has a municipal policy that its police and prosecutors can commit unconstitutional acts with impunity." (Amended complaint, ¶ 104). However, even if true, such a policy "cannot ordinarily be inferred from a single incident of illegality, such as a first false arrest or excessive use of force, absent some additional circumstances." *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). In *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.1980), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), while acknowledging that "official policy" can "be

inferred from informal acts or omissions of supervisory municipal officials," 619 F.2d at 200, the Second Circuit also declared that such official policy cannot be so inferred "absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct...." *Id.* at 202.

Besides conclusory and vague allegations of so called municipal policy condoning the commission of unconstitutional acts by its officers, plaintiff has not alleged any facts to show either prior pattern or practice of unconstitutional acts, much less acquiescence or ratification of such acts by the city. Consequently, defendant City of New York's motion for summary judgment is granted.

## VII. SECTION 1983 ACTION AGAINST DEFENDANTS POLICE OFFICERS

▮▮▮▮ No civil action is available to plaintiff under Section 1983 for an arrest and subsequent detention made pursuant to a valid arrest warrant. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Section 1983 imposes liability for violations of rights protected by the Constitution. "The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" *Id.* at 145, 99 S.Ct. at 2695. Plaintiff in *Baker v. McCollan, supra,* like plaintiff in this case, "was arrested pursuant to a facially valid warrant." *Id.* at 143, 99 S.Ct. at 2694. "A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with 'due process of law.'" *Id.* at 145, 99 S.Ct. at 2695. Since the arrest was made on probable cause, the officer executing the arrest warrant is not "required by the Constitution to investigate independently every claim of innocence...." *Id.* at 145–46, 99 S.Ct. at 2695. Nor is a civil action, under these circumstances, available under New York law. *Broughton v. State of New York,* 335 N.E.2d 310, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 94–95 (1975), *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257

("[A]rrest warrant application will generate a presumption that the arrest was issued on probable cause.... [P]robable cause existing at the time of arrest will validate the arrest and relieve the defendant of liability.") *Vittorio v. St. Regis Paper Co.,* 145 N.E. 913, 239 N.Y. 148 (1924).

Defendants police officers' motion for summary judgment is granted.

## VIII. SECTION 1983 ACTION AGAINST DEFENDANTS UNITED JEWISH APPEAL, SHULTE, ROTH, AND ZABEL, THE FEDERATION OF JEWISH PHILANTHROPIES, THE ASSOCIATED YM–YWHA OF GREATER NEW YORK, AND THE SAMUEL FIELD YM–YWHA

▮▮▮▮ The section 1983 action against these defendants may be dismissed under *Monell v. Dep't of Social Services, supra,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, which makes clear that no vicarious liability attaches to an employer by virtue of the existence of an employer-employee relationship with a tortfeasor. *Id.* at 691, 98 S.Ct. at 2036. The Court unequivocally denies recovery "under § 1983 on a respondeat superior theory." *Id.* Moreover, to allege a cause of action under section 1983, plaintiff must charge that the conduct, which must be constitutionally protected, be fairly attributable to the state. The Second Circuit stated in *Dahlberg v. Becker,* 748 F.2d 85, 89 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), that for a plaintiff to allege a sufficient cause of action, the plaintiff must "show that the party charged with the deprivation is a person who is a state official or someone whose conduct is otherwise chargeable to the State." A private citizen may be liable under section 1983 if he was a "willful participant in joint activity with the State or its agents." *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966) (footnote omitted). No such joint activity involving these defendants and the State can be made out here. In addition, because these defendants are not employees or agents of the state or of any municipal subdivision, plain-

tiff has failed to show either the existence of state action or state actor.[2]

Moreover, participation of a private party in litigation, without "any specific instance of 'joint action' involving state employees" does not constitute state action or action under color of state law. *Ragosta v. State of Vermont*, 556 F.Supp. 220, 227 (D.Vt.1981), *aff'd without opinion*, 697 F.2d 296 (2d Cir.1982). In *Ragosta, supra*, 556 F.Supp. at 225, the court stated that "[i]n the absence of specific claims of unlawful cooperation with state officials, an attorney engaged in civil litigation on behalf of a private client cannot be said to be acting under color of state law." Similarly in *Fine v. City of New York*, 529 F.2d 70 (2d Cir.1975), the court denied plaintiff's section 1983 claim against his own attorney based on allegation that his attorney had extorted money from him in the course of a criminal prosecution. Without specific allegations of "concerted activity" between the state or its agents and plaintiff's attorney, *id.* at 74, the court held that plaintiff's claim against his attorney fails to meet the state action requirement, because his attorney did not act under color of state law but "merely in the capacity of a private attorney then representing [plaintiff] in state criminal proceedings." *See also Stevens v. Frick*, 372 F.2d 378, 381 (3d Cir.1967), *cert. denied*, 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967) ("merely by holding its courts open to litigation of complaints, regardless of how baseless they eventually prove to be, [the state] does not clothe persons who use its judicial processes with the authority of the state...."). Katz's section 1983 claims against the above defendants arise solely from their participation as witnesses, counsel, or party in a criminal proceeding, a position from which courts have not found state action. *See e.g., San Filippo v. United States Trust Co. of New York*, 737 F.2d 246, 256 (2d Cir.1984), *cert. denied* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) ("a private party giving testimony is not 'acting under color of state law' for purposes of § 1983 ... and ... all witnesses, whether private parties or government officials, have absolute immunity from damages liability for their testimony...."); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (section 1983 action against various parties arising from "their participation as counsel, party, and potential witnesses" must fail because "participation by a private party in litigation, without more, does not constitute state action.")

Even if the parties misused a constitutionally sound state statute, such action does not describe conduct that can be attributed to the state for section 1983 purposes. *Lugar v. Edmondson Oil*, 457 U.S. 922, 940–41, 102 S.Ct. 2744, 2755–56, 73 L.Ed.2d 482 (1982). In *Dahlberg v. Becker, supra*, 748 F.2d at 90, the court explained that "[i]n *Lugar* the state statute was itself constitutionally defective. Since a State is charged with the responsibility of assuring that its laws are constitutional, a constitutionally defective statute is plainly a product of state action." Plaintiff here has not shown that any state statute at issue is constitutionally deficient. The *Dahlberg* court concluded that "[i]t is one thing to hold a state accountable for the unconstitutional acts of its legislators, but quite another to charge that State with responsibility where private parties abuse an otherwise valid state law. In the latter case, the state does not sanction such abuse, nor can it prevent it any more than it can stop a private party from committing a crime or tort." *Id.* at 90–91.

And even if defendants' acts constituted state action, it is settled law that when plaintiff's allegations of conspir-

---

**2.** For all practical purposes, there is no real difference between the required showing of state action under the Fourteenth Amendment and the required showing of "under color of state law" under 42 U.S.C. § 1983. *United States v. Price*, 383 U.S. 787, 793 n. 5, 86 S.Ct. 1152, 1156 n. 5, 16 L.Ed.2d 267 (1966) ("In cases under § 1983, 'under color' of law has consist-

ently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.") Thus, plaintiff's claims against defendants asserted under the Fourteenth Amendment must also be dismissed. *See Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637, 645 n. 10 (S.D.N.Y.1977).

acy are vague and conclusory, they cannot withstand the motion for summary judgment. *San Filippo v. United States Trust Co. of New York, supra,* 737 F.2d 246, 256 ("unsubstantiated allegations of conspiracy are insufficient to state a valid claim of relief under § 1983"); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed. 2d 158 (1983) (court affirmed dismissal of plaintiff's complaint where "allegations as to a conspiracy are ... vague and unsupported by description of particular overt acts."); *Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir.1978) (court held that complaint alleging conspiracy was insufficient to state a cause of action under the civil rights statute because " '[i]t was incumbent upon [plaintiff] to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.' ") (quoting *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964)); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) ("Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.... [A]ppellants' unsupported allegations, which fail to specify in detail the factual basis necessary to enable appellees intelligently to prepare their defense, will not suffice to sustain a claim of governmental conspiracy to deprive appellants of their constitutional rights."); *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976) ("Complaints relying on the civil rights statutes are plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of civil rights rather than state simple conclusions."); *Powell v. Workmen's Compensation Board of the State of New York,* 327 F.2d 131, 137 (2d Cir.1964) (plaintiff failed to point to any overt act aimed at the commission of conspiracy against him). In *Powell v. Workmen's Compensation Board of the State of New York, supra,* 327 F.2d at 137, for example, the court found no merit to plaintiff's conspiracy allegations where the facts indicated no more than the actions of several interested parties who vigorously sought to protect their own interests.

In addition, plaintiff alleges no facts in support of his charges that anything more substantial existed between Anita Sarno, the United Jewish Appeal, and the other above-named corporate defendants (amended complaint ¶¶ 110–23). To support a complaint of conspiracy, he must prove that defendants acted in a willful manner, culminating in an agreement, understanding, or "meeting of the minds," that violated plaintiff's rights, privileges, or immunities secured by the Constitution or federal courts. *Dahlberg, supra,* 748 F.2d at 93.

Plaintiff has offered no facts in support of his charge of conspiracy. He simply alleges that a conspiracy between defendants Sarno, the United Jewish Appeal, and the Federation defendants resulted in their testifying "against me at my trial after being coached and prepared by Assistant District Attorney Giddins to mislead the court and the jury." (Amended complaint, ¶ 36). No evidence exists that the relationship between the defendants and the prosecuting attorneys was anything other than that of prosecutor and witness, a relationship which the Second Circuit protects. *San Filippo v. United States Trust, supra,* 737 F.2d at 256. ("Even assuming some legitimate basis for charging that the defendants had given any false testimony —of which on this record we have no evidence whatever—[plaintiff] is precluded from bringing suit on that ground both because a private party giving testimony is not 'acting under color of state law' for purposes of § 1983 [citation omitted], and because all witnesses, whether private parties or government officials, have absolute immunity from damages liability for their testimony....")

Plaintiff blithely charges conspiracy by painting a picture of a personal vendetta of all twenty-three named defendants through conclusory allegations and recitation of their role in the complaint lodged against him. His charges against the above defendants, for reasons discussed above, must therefore fail. Summary judgment in favor of the defendants is granted.

## IX. SECTION 1983 ACTION AGAINST WITNESSES

 Even if the witnesses were coached, as Katz argues in support of his contention of conspiracy, as discussed above, all witnesses, whether private parties or government officials, have absolute immunity from damage liability for their trial testimony. *See e.g., Briscoe v. Lahue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *San Filippo v. United States Trust Co., supra,* 737 F.2d 246, 254 (2d Cir.1984). This well-settled law is also regularly adhered to in other circuits. *See e.g., Charles v. Wade,* 665 F.2d 661, 666 (5th Cir.1982), *cert. denied,* 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983); *Burke v. Miller,* 580 F.2d 108, 109 (4th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); *Blevins v. Ford,* 572 F.2d 1336, 1338 (9th Cir.1978); *Bennett v. Passic,* 545 F.2d 1260, 1264 (10th Cir.1976).

New York courts, moreover, extend this privilege to a party, witness, counsel, or judge based on testimony given in the course of a judicial or quasi-judicial proceeding. *Levy v. State of New York,* 445 N.E.2d 203, 58 N.Y.2d 733, 459 N.Y.S.2d 27 (1982); *Martirano v. Frost,* 255 N.E.2d 693, 25 N.Y.2d 505, 307 N.Y.S.2d 425 (1969). As a matter of law, no conspiracy claim may be supported here. Plaintiff's claim is denied.

## X. PROSECUTORIAL IMMUNITY

 The section 1983 charges for malicious prosecution and conspiracy against defendants Morgenthau, Giddins, Gabrilove, and Wilson are also barred by absolute immunity with reference to the not guilty jury determination of misdemeanor coercion.[3]

It is well established that government prosecutors enjoy absolute immunity in section 1983 actions relating to the pre-trial and trial stages of a criminal case. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Betts v. Richard,* 726 F.2d 79, 80 (2d Cir.1984); *Taylor v. Kavanagh,* 640 F.2d 450, 454 (2d Cir.1981); *Lee v. Willins,* 617 F.2d 320, 321–22 (2d Cir.1980), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980).

 *Imbler* held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. at 431, 96 S.Ct. at 995. Absolute immunity from section 1983 liability exists for those acts of prosecutors which are "intimately associated with the judicial phase of the criminal process...." *Id.* at 430, 96 S.Ct. at 995. Such "quasi-judicial" activities include the initiation of prosecution and the presentation of the case by the government. *Id.* at 431, 96 S.Ct. at 995. The Court, however, recognized that absolute immunity may not be applicable to acts by a prosecutor that are of an investigative or administrative capacity. *Id.* at 430–31 n. 33, 96 S.Ct. at 995 n. 33. When prosecutors act in an investigative or administrative capacity, they are entitled only to the qualified "good faith" immunity also accorded police officers. *Taylor v. Kavanagh, supra,* 640 F.2d at 452.

 The inquiry thus centers on the " 'nature of the official behavior challenged, not the identity or title of the officer responsible therefor.' " *Lee v. Willins,*

---

**3.** It is well established that to maintain a federal claim for malicious prosecution, the plaintiff must show that the state prosecution terminated in his favor. *Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1982); Restatement (Second) of Torts § 658 (1977). Proceedings are terminated when the final disposition of the case is one of not guilty, *Singleton, supra,* 632 F.2d at 193. To permit otherwise "would permit a defendant to relitigate the issue of probable cause by way of a section 1983 action, despite the state court's determination of that issue against him after a full and fair consideration of the evidence, thus posing the prospect of harassment, waste and endless litigation, contrary to principles of federalism." *Id.* at 195.

In the instant case, plaintiff was convicted of aggravated harassment by a jury, and so plaintiff cannot be said to be the victim of a prosecution without probable cause except with regard to the not guilty finding.

617 F.2d 320, 321 (2d Cir.1980) (quoting *Briggs v. Goodwin*, 569 F.2d 10, 21 (D.C. Cir.1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978)). Therefore, whether or not prosecutors enjoy absolute or qualified "good faith" immunity depends ultimately on the functional nature of the prosecutorial behavior, not on the status of the person acting. *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981) ("a prosecutor is insulated from liability where his actions directly concern the pretrial or trial phases of a case.") Nor does the motive of the prosecutor matter. *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

The Supreme Court in *Imbler* recognizes that the "judicial phase of the criminal process" may not be so easily separated from the administrative or investigative phase. The Court noted that the "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Lower courts, then, are left with the difficult task of deciding which activity conducted by a prosecutor is investigatory and which prosecutorial. For example, because "prosecutorial and investigatory activities are necessarily interrelated to some degree," *Lee v. Willins, supra,* 617 F.2d at 322, the trial judge applied the *Imbler* test "by reference to the type of harm allegedly suffered." *Id.* The Second Circuit has crafted a means by which to separate "prosecutorial" from "investigative" functions "based on the functional nature of prosecutorial behavior and the type of harm allegedly suffered." *MacRae v. Motto*, 543 F.Supp. 1007, 1010 (S.D.N.Y. 1982).

█ Any injury suffered by plaintiff from those charges ultimately dropped by the District Attorney, dismissed by the judge, or which resulted in a not guilty finding by the jury is first of all the type of injury suffered as a consequence of initiation and presentation of prosecution and, secondly, of insufficient proportion to warrant a waiver of the absolute immunity doctrine. The Second Circuit has found it insufficient to warrant a determination that a prosecutor not be afforded absolute immunity, in fact, even where plaintiff was tried five times on the same murder indictment. *Lee v. Willins, supra,* 617 F.2d 320. In that case, plaintiff's first trial ended in a hung jury, the second trial resulting in a conviction was reversed on appeal, the third and fourth trial resulted in deadlocked juries, and the fifth indictment dismissed by the trial judge, who ordered plaintiff released from prison where he had been held for five years while awaiting trial. The court found that the injuries resulting from the alleged prosecutorial misconduct, including allegations of falsification of evidence and the coercion of perjured testimony from witnesses, are injuries resulting from acts of the prosecutor for which the Supreme Court in *Imbler v. Pachtman, supra,* 424 U.S. 409, 96 S.Ct. 984, granted absolute immunity. Because the injury suffered by plaintiff Lee, as allegedly by plaintiff in the instant case, is the kind resulting directly from his prosecution, the prosecutor is afforded absolute immunity from suit.

█ By contrast, participation in an illegal search and seizure that violates an individual's Fourth Amendment right, as also alleged here, for example, is not protected by the absolute immunity doctrine, but only by qualified "good faith" immunity that protects police officers because of the harm caused by the invasion to the victim's privacy. *Hampton v. Hanrahan*, 600 F.2d 600, 635 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam); *Taylor v. Kavanagh, supra,* 640 F.2d at 452.

However, to go forward with a section 1983 action against a prosecutor, the plaintiff's "allegations should be specific as to what the prosecutor did so that it will be apparent from the face of the complaint that the actions complained of were improper and the injury suffered was of constitutional proportion." *Martin v. Merola*, 532 F.2d 191, 198 (2d Cir.1976) (Lumbard, J., concurring). *See also Ostrer v. Aron-*

*wald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam); *MacRae v. Motto, supra,* 543 F.Supp. at 1010–11 (plaintiffs' action against certain prosecutors was dismissed because plaintiffs have not "stated a cognizable claim against these defendants.... [T]he search was conducted pursuant to a warrant issued by a judge.... On the papers presented it has not been shown in what respect, with regard to these plaintiffs, the search ... and the seizure of the property contained therein were illegal." Moreover, plaintiffs' "claim against these defendants must fall for lack of specificity." *Id.* at 1011.

■ Plaintiff's allegation that the District Attorney's status as a member of the Federation Board and his receipt of $300 in campaign contributions constitute a conflict of interest must also fail for similar reasons. First, no facts are alleged to support plaintiff's claim that Morgenthau directed and ordered the prosecution and the allegedly improper acts that occurred during the course of the prosecution. The action was, in fact, brought by Assistant District Attorney Giddins.

Second, prosecutorial motives are protected in this Circuit with regard to a decision to initiate prosecution. *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). Prosecutorial discretion is necessary because it is often "impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." "[P]ublic interest calls for action which may turn out to be founded on a mistake." *Id.* The scale is deemed to be better tipped towards leaving "unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Id.*

The Second Circuit has stated: "[W]e think it is imperative for courts to examine with great care any suit charging that prosecution witnesses conspired with the prosecutor, and to dismiss on pre-trial motion those that are clearly baseless." *San Filippo, supra,* 737 F.2d at 256. Plaintiff's conviction, which was subsequently affirmed by The Appellate Term of the Supreme Court, First Department, and his petition for certiorari to the United States Supreme Court which was denied, suggest that charges against him were not baseless, while plaintiff's own unsubstantiated charges of prosecutorial misconduct, the court deems, are clearly baseless and defendants' motion for summary judgment on the basis of absolute prosecutorial immunity is granted.

■ In his briefs, plaintiff incessantly repeats his point that it was bad faith for the District Attorney and the Assistant District Attorneys to charge him with crimes of harassment which cannot be committed against a corporation. Yet, this question of state law has been examined and decided by the New York state courts. On March 6, 1985, plaintiff was found guilty by a jury of Aggravated Harassment in the Second Degree. In December 1986, his conviction was affirmed by the Appellate Term of the New York Supreme Court. On August 20, 1987, leave to appeal to the New York Court of Appeal was denied, 70 N.Y.2d 713, 519 N.Y.S.2d 1048, 513 N.E.2d 1316. On November 30, 1987, his appeal to the United States Supreme Court was dismissed for want of a substantial federal question, —— U.S. ——, 108 S.Ct. 446, 98 L.Ed.2d 387. This appeal was treated as a petition for ceriorari and the petition denied. On January 25, 1988, plaintiff's petition for rehearing was also denied, —— U.S. ——, 108 S.Ct. 787, 98 L.Ed.2d 872. Plaintiff cannot say that the defendants' initiation and prosecution of plaintiff for harassment were done in bad faith or that charges against him were so baseless and unsubstantiated that these defendants should be subject to damages liability under section 1983.

■ Likewise, plaintiff offers no factual allegations in support of his claim that these prosecution defendants conspired against him. The search of plaintiff's

home and the confiscation of his gun occurred pursuant to a warrant issued by a judge. *See MacRae v. Motto, supra,* 543 F.Supp. at 1010–11. Plaintiff alleges only that the District Attorney was motivated to bring an action against him because the former is a Board member of the Federation and has received $310 in campaign contributions from Federation employees or Board members (amended complaint, exhibits G & H) and also because he, the District Attorney, wanted to help cover up alleged "sweetheart contracts" and kickbacks. Aside from the fact that the District Attorney stated in his affidavit that he was unaware of the contribution, that contribution in itself does not sufficiently state the claim that the District Attorney conspired with the members of the Federation, or instructed his assistants to so conspire, in order to engage in retaliatory prosecution against plaintiff.

 The only specific facts pleaded as to Assistant District Attorneys Wilson and Gabrilove are that they are Assistant District Attorneys assigned to the Consumer Complaint Bureau and that Wilson is its Bureau Chief, all employed by District Attorney Morgenthau. The only specific facts pleaded as to Assistant District Attorney Giddins is that he successfully prosecuted plaintiff (amended complaint, ¶¶ 24, 25, 26).

Otherwise, these defendants, plaintiff sweepingly argues, committed illegal acts of perjury in swearing to the warrant for plaintiff's arrest, ordered the improper search of plaintiff's home, falsified evidence to procure that arrest warrant and conviction, and perjured themselves before the trial judge in a *coram nobis* proceeding by failing to inform him about the District Attorney's connections to the Federation (amended complaint, ¶¶ 16–34). Plaintiff's affidavit in opposition to defendants' Morgenthau, Wilson, Gabrilove, and Giddins' motion for summary judgment simply contains no competent proof of the facts he so sweepingly alleged in his complaint. Rule 56(e) requires "opposing affidavits [to] be made on personal knowledge [and to] set forth such facts as would be admissible in evidence." Plaintiff has also failed to do this.

As discussed, the Second Circuit has held that complaints with vague and conclusory allegations of a conspiracy to deprive a person of constitutional rights simply cannot withstand a motion for summary judgment. "[I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover." *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981). "Where a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judgment." *Id.* Defendants' motion for summary judgment is granted as a matter of law.

## XI. STATE CLAIMS

 Plaintiff alleges an array of infractions of state law including assault, battery, conversion, false arrest, false imprisonment, injurious falsehood, intentional infliction of emotional distress, libel, slander, trespass, a prima facie tort, violation of his right to privacy, malicious prosecution, and malicious abuse of process. Because the state claims arise from the same operative facts surrounding plaintiff's arrest, they must fail for the same reasons the federal claims fail. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Moreover, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* But "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

## XII. SECTIONS 1981, 1982, 1985 AND 1986 CLAIMS

 Plaintiff's complaint fails to state a claim under 42 U.S.C. §§ 1981 and 1982

because it does not contain allegations of class-based or racial discriminatory animus. 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States should have the same right in every state and Territory to make and enforce contracts and to sue, be parties, give evidence and to the full and equal benefit of all laws and processes for the security of persons and and property as enjoyed by white citizens and shall be subject to like punishment, penalties, taxes, licenses and exactions of every kind and to no other.

42 U.S.C. § 1982 provides:

All citizens of the United States shall have the same right, in every state and territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Plaintiff's claim, by failing to allege racial or class discrimination, is thus fatally defective. *Saint Francis College v. Al Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

■ Plaintiff may also not bring a claim under 42 U.S.C. § 1985 which requires intent to deprive plaintiff of equal protection or equal privileges and immunities based on class or racial animus. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). As the Court stated in referring to 42 U.S.C. § 1985(3), "[t]he language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798 (emphasis in original). *See also Martin Hodas v. Lindsay, supra*, 431 F.Supp. at 645.[4] There, the court found that plaintiffs' complaint based on 42 U.S.C. § 1985 fails to state a claim on which relief could be granted because whether under § 1985(2) or § 1985(3), "class-based, invidiously discriminatory ani-

mus" must be alleged and plaintiffs, like Katz in the instant case, have so failed.

Lower court decisions have held that the prevailing test for such animus is whether defendant's actions evince an " 'irrational and odious class discrimination akin to racial bias—such as discrimination based on national origin or religion.' " *Weiss v. Willow Tree Civic Association*, 467 F.Supp. 803, 812 n. 25 (S.D.N.Y.1979) (quoting *Arnold v. Tiffany*, 359 F.Supp. 1034, 1036 (C.D.Cal.), *aff'd* 487 F.2d 216 (9th Cir.1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974)). No such claim is alleged here.

■ Consequently, because plaintiff has failed to state a cause of action under 42 U.S.C. § 1985, plaintiff has failed to state a claim under 42 U.S.C. § 1986. Section 1986 provides a cause of action against every person who, having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so. The Second Circuit in *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir.1978), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978), stated the following: "Having failed to state a cause of action under § 1985, plaintiff has failed to state a claim under § 1986." *See also Martin Hodas v. Lindsay, supra*, 431 F.Supp. at 645 ("if no cause of action is made out under 1985, none exists under 1986. . . ."). Plaintiff's § 1986 claim is thus dismissed.

■ Finally, plaintiff seeks an award of attorney's fees under 42 U.S.C. § 1988. Such an award is unavailable to an unsuccessful party in a civil rights action. The Supreme Court stated in *Hanrahan v. Hampton*, 446 U.S. 754, 756, 100 S.Ct. 1987, 1988, 64 L.Ed.2d 670 (1980) (per curiam) that the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, "by its terms thus permits the award of attorney's fees only to a 'prevailing party.' " *See also McGill v. Secretary of Health*

---

**4.** While it is unclear whether plaintiff asserts a section 1985(2) or (3) claim, under either subsection, plaintiff's complaint is deficient and as such the section 1985 claim must be dismissed.

*Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637 (S.D.N.Y.1977); *Richards v. New York State Dep't of Correctional Services*, 572 F.Supp. 1168, 1175 (S.D.N.Y.1983).

*and Human Services,* 712 F.2d 28, 30 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984). Because defendants' motion for summary judgment is granted, plaintiff cannot be said to be a "prevailing party" and his request must therefore be denied.

## CONCLUSION

Defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed. This action is discontinued.